THE SEHAT LAW FIRM, PLC
Cameron Sehat, Esq. (SBN: 256535)
19800 MacArthur Blvd., Suite 1000
Irvine, CA 92612
Telephone: (949) 825-5200
Email: Cameron@sehatlaw.com

Michael Tater, In Pro Per
16136 Twinkle Circle
Huntington Beach, CA 92649
Telephone: (714) 443-8835

Attorney for Kyla Skye Staniskis
individually, and as Successor-In-
Interest to the Estate of Shannon Tater

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GEORGE TATER, individually; KYLA SKYE STANISKIS, individually and as Personal Representative of the Estate of SHANNON MICHELLE TATER<br><br>           Plaintiffs,<br><br>   vs.<br><br>CITY OF HUNTINGTON BEACH , a Governmental Entity; STEPHANI WILLIAMS, individually; MICHAEL WAGNER, individually; NICOLE SHOGREN, individually; KELLI HERRERA, individually; and DOES 1 through 10, inclusive,<br><br>           Defendants. | Case No.:<br>**COMPLAINT FOR DAMAGES**<br>1. **Deliberate Indifference to a Substantial Risk of Harm to Health & Safety 42 U.S.C. § 1983- 14th Am. (*Gordon v. County of Orange claim*)**<br>2. **14th Amendment Violation- State Created Danger**<br>3. **Denial of Medical Care - 42 U.S.C. §1983**<br>4. **Violation of Title II Of The Americans with Disabilities Act and The Rehabilitation Act**<br>5. **Supervisory Liability-42 U.S.C.§1983**<br>6. ***Monell*-Failure To Train-42 U.S.C.§1983**<br>7. ***Monell* – Unconstitutional, Custom, Practice & Policy-42 U.S.C. §1983**<br>8. **Negligence-Wrongful Death (State)**<br>9. **Battery (State)**<br>10. **Unreasonable Seizure-4th Amendment 42 U.S.C. §1983**<br>11. **Bane Act C.C. 52.1 Et Seq. (State)**<br>12. **14Th Amendment-Interference With Familial Relations - 42 U.S.C. § 1983**<br>**DEMAND FOR JURY TRIAL** |

**PRELIMINARY STATEMENT**

1.  Plaintiff, Kyla Skye Staniskis, is the adult daughter and successor-in-interest to Shannon Tater, hereinafter referred to as the "TATER" or "Decedent". Kyla Skye Staniskis is also acting in the capacity of a personal representative of the estate of TATER and also individually.

2.  Plaintiff, Michael George Tater, is the father of Shannon Tater, and is acting in his own capacity as the sole surviving parent.

3.  Plaintiffs, on behalf of Decedent, who was a pretrial detainee at the Huntington Beach City Jail, operated by the Huntington Beach Police Department, jointly bring this action against the City of Huntington Beach  ("CITY"), Huntington Beach police officer Stephani Williams, and jailers Michael Wagner, Nicole Shogren, and Kelli Herrera and DOES 1 through 10 for monetary damages to redress for the decedent's injuries and death resulting from Defendants' deliberate indifference and reckless disregard of her constitutional rights and liberties. Plaintiffs bring this action under the Fourth and Fourteenth Amendment of the United States Constitution and the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983, for injuries and death suffered as a result of the Defendants' substantial and deliberate indifference to Decedent's health and welfare while she was in their custody.  Plaintiffs further bring their 14th Amendment Deliberate indifference claim under the recent 9th Circuit Court of Appeals decision in *Gordon v. County of Orange et* al. *888 F.3d 1118* . Plaintiffs state a claim against the Defendants for a failure to establish policies, procedures and training which resulted in the subject incident. This is a civil action seeking damages against the Defendants for committing acts under color of law, and depriving Decedent of rights secured by the Constitution and laws of the United States (42 U.S.C. § 1983) and by Title II of the Americans with Disabilities Act and the Rehabilitation Act. Defendants, CITY, and the Huntington Beach city jail detention officials and management and employees including all named defendants and DOES "one"

through "ten", were deliberately indifferent by, without limiting other acts and behaviors: using excessive force upon the decedent, then ignoring her desperate pleas for psychiatric help, when it was obvious to a lay person that decedent was suffering from a known mental health crisis, by failing to follow Defendants' own established *H&S §5150* policies and procedures which required the placement of a hold on a detainee who is a danger to herself and gravely ill, by failing to protect the decedent from harm, by discriminating against the decedent who unequivocally suffered from a known disability consisting of mental illness and substance abuse disorder, by failing to provide necessary and appropriate medical treatment and,  by failing to provide necessary and appropriate personnel necessary for the health and welfare of Decedent, who at the time of death, was a pretrial detainee at the city jail, in the city of Huntington Beach, California. Defendants deprived the Decedent's rights as guaranteed by the Fourth and Fourteenth and Amendment to the Constitution of the United States against cruel and unusual punishment.

4.  The Defendants, and its management and employees violated the decedent's constitutional rights and were deliberately indifferent by, without limiting other acts and behaviors: (1) deliberately ignoring and failing to heed to decedent's known serious medical condition, to wit, decedent's unstable mental illness and substance use disorder which subjected her to being a danger to herself and gravely ill  (2) ignoring decedent's numerous verbal requests to remain at the Huntington Beach Hospital due to a noted psychiatric illness (3) failing to return decedent to the hospital for a *H&S 5150* hold and psychiatric care  (4) failing to supervise and monitor a known mentally unstable detainee (5) failing to provide necessary and appropriate personnel for the health and welfare of the decedent (6) using excessive force and physical abuse upon the decedent (7) failing to collect and preserve evidence (8) failing to train defendants in the risk assessment of detainees who are at high risk for harming themselves and are a danger to

themselves  (9) failing to implement *H&S 5150* policies and procedures concerning at risk in-custodies.   As a consequence of the defendants' actions, Decedent Shannon Tater suffered debilitating physical, emotional, and psychological injury all proximately causing her death which action constituted a clear deprivation of her constitutional rights.

## JURISDICTION AND VENUE

5.    This action is filed under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and the Fourth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983, to redress injuries and the death suffered by the plaintiffs' decedent at the hands of defendants.

6.    This Court has jurisdiction over the federal civil rights claim pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1367(a).

7.    On February 24, 2020 Plaintiffs submitted a Government Tort Claim to the City of Huntington Beach, city clerk. On April 1, 2020, City rejected the claim and hence, this lawsuit ensued.

8.  Jurisdiction and venue are proper in the Central District of California in that the acts of misconduct occurred within the Central District of California with such acts causing the death of Shannon Tater.

9.  At all relevant times, the Decedent, was a pretrial detainee at the Huntington Beach City Jail operated by the Huntington Beach Police Department.

10. Venue is proper in this Court pursuant to Title 28 U.S.C. § 1391(b) and (c).

## PARTIES

11.    At all times relevant to this complaint, Plaintiff, Kyla Skye Staniskis, is the adult daughter and successor-in-interest to Shannon Tater, and is an individual residing in Orange County, California.

12.      At all times relevant to this complaint, Plaintiff, Michael Tater, is the sole parent of Shannon Tater, and is an individual residing in Orange County, California

13.    Defendant City of Huntington Beach, hereinafter known as "CITY", is a government entity that acts through individuals to establish its policies and that is capable of being sued under federal law.

14.    Defendant Stephani Williams, hereinafter referred to as "WILLIAMS", is an employee of the Huntington Beach police department, a subsidiary of Defendant CITY, and at times relevant to the complaint was employed in the capacity of a police officer.  Defendant WILLIAMS is a duly authorized employee and agent of CITY, and was acting within the course and scope of her perspective duties as a police officer with the complete authority and ratification of her principal, CITY.  Defendant WILLIAMS is being sued in her individual capacity.

15.    Defendant Michael Wagner, hereinafter referred to as "WAGNER", is an employee of the Huntington Beach police department, a subsidiary of Defendant CITY, and at times relevant to the complaint was employed in the capacity of a jailer or detention officer.  Defendant WAGNER is a duly authorized employee and agent of CITY, and was acting within the course and scope of his perspective duties as a jailer with the complete authority and ratification of his principal, CITY.  Defendant WAGNER is being sued in his individual capacity.

16.    Defendant Nichole Shogren, hereinafter referred to as "SHOGREN ", is an employee of the Huntington Beach police department, a subsidiary of Defendant CITY, and at times relevant to the complaint was employed in the capacity of a jailer or detention officer.  Defendant SHOGREN is a duly authorized employee and agent of CITY, and was acting within the course and scope of his perspective duties as a jailer with the complete authority and

ratification of her principal, CITY.  Defendant SHOGREN is being sued in her individual capacity.

17.    Defendant Kelli Herrera, hereinafter referred to as "HERRERA", is an employee of the Huntington Beach police department, a subsidiary of Defendant CITY, and at times relevant to the complaint was employed in the capacity of a jailer or detention officer. Additionally, HERRERA was also acting in the capacity of a supervisor.  Defendant HERRERA is a duly authorized employee and agent of CITY, and was acting within the course and scope of his perspective duties as a jailer with the complete authority and ratification of his principal, CITY.  Defendant HERRERA is being sued in her individual capacity.

18.    DOES 1 through 10 are employees of defendant CITY, and at all times relevant to the complaint were employed in the capacity of police officers and jailers at the jail.  They are duly authorized employees and agents of the CITY, and were acting within the course and scope of their perspective duties as staff in the Huntington Beach City Jail with the complete authority and ratification of their principal, Defendant CITY.  DOES 1 thru 10 are sued in their individual and official capacities.

19.    At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every defendant herein.

## FACTUAL ALLEGATIONS

20.    At all relevant times to this complaint, Ms. Tater suffered from mental illnesses including Bipolar disorder and substance use disorder.

21.    On August 16, 2019, Ms. Tater was arrested and placed on an *H&S 5151* hold at the College Hospital with a determination that she was not psychiatrically stable, a danger to herself, and gravely disabled. College Hospital also noted that Ms. Tater had a significant fear of HBPD police officers, and was concerned they abused her and intended on hurting her. After a three day hold expired, Ms. Tater

was released into the custody and care of her father, Michael Tater.   Upon and information and belief, Defendants had access to the aforesaid information.

22.     On August 26, 2019, Ms. Tater, was arrested twice by the HBDP officers, for "huffing" and being under the influence of an intoxicant, an aerosol air duster. She was first arrested near 5941 Warner Av., Huntington Beach at approximately 8:51 a.m., then subsequently released. Officer Cerda, the arresting officer noted, that Ms. Tater was so intoxicated that she could have been a danger to her herself, that being  the reason for why he decided to book her to begin with. Thereafter, she was rearrested that same day at approximately 2:40 pm by defendant WILLIAMS, also for being under the influence of an intoxicant at or near 7201 Yorktown Av., Huntington Beach. Again, defendant WILLIAMS arrested Ms. Tater noted she was so intoxicated that she could have been a danger to herself.

23.     Huffing canned air is the intentional inhalation of chemical vapors to attain a "high" or euphoric effect, and can also cause possible hallucinations and delusions. The effects of huffing may also be paralyzing, interfering with a person's ability to move normally or even move at all. Dizziness, loss of inhibitions, inability to make sound decisions, and slurred speech are common results of huffing. In more serious cases, loss of consciousness and cardiac arrest can occur.

24.     During the second arrest, defendant WILLIAMS used an excessive amount of force to subdue and detain Ms. Tater causing a head injury to back her head, after Ms. Tater was tackled to the ground, striking her head against the concrete.

25.     After Ms. Tater suffered her head injury, defendant WILLIAMS called the paramedics to transport Ms. Tater to the Huntington Beach Hospital to specifically be evaluated for her head injury and drug overdose.

26.     WILLIAMS and Ms. Tater arrived at the hospital at approximately 3:00 p.m., while handcuffed to her bed and while being actively detained by

WILLIAMS, received an evaluation for the head injury, with noted abrasion and hematoma to the back of her head. She was seen by a nurse who provided first aid treatment to the abrasion.

27. However, during the same hospital visit, Ms. Tater began complaining that she was going through a mental crisis and need immediate help, pleaded to see a doctor and get psychiatric medication for her mental health. She pleaded and begged defendant WILLIAMS to see a psychiatrist and get further psychiatric care, but WILLIAMS turned a deaf ear to her pleas for help and ignored her.

28.   In fact, Ms. Tater unequivocally informed WILLIAMS that she was mentally unstable, she previously tried to kill herself, she was currently suicidal, at times crying out that she needed to be "*5150'd*" and did not feel safe in any place, she was not on medication and urgently needed to speak with a mental health professional. Despite such irrefutable warning statements, WILLIAMS deliberately chose to ignore them, consequently placing a psychiatrically unstable Tater in grave danger.

29.  WILLIAMS had ample opportunity to do her job and admit Ms. Tater on a 5150 hold while at the hospital. In fact, because the Huntington Beach Hospital was well equipped to process psychiatric patients and to detain subjects pursuant to an H&S 5150 holds, WILLIAMS' failure to do so was even more egregious.

30.    In its stead, WILLIAMS began applying an unsanctioned and painful wrist control hold in order to force Ms. Tater out of the hospital bed and back to jail; WILLIAMS further hinders medical care by preventing a nurse to thoroughly take care of Ms. Tater's head wound.  All the while, Ms. Tater is sobbing and desperately continuing to asking for psychiatric help.

31.    According to A.D.A., 42 U.S.C. 12102(1), "Disability" is defined as having a physical  or mental impairment that substantially limits one or more major life activities of such individual, a record of such an impairment or being regarded as having such an impairment.

32.     As of all dates relevant to this complaint, Ms. Tater was disabled due to several limitations including her then current psychiatric instability, her underlying mental health illnesses, and her impairment due to her substance use disorder.

33.     WILLIAMS and Ms. Tater arrived at the Huntington Beach City Jail, at approximately 5:30 p.m. While in the jail, Ms. Tater underwent the booking process including being searched and getting fingerprinted.

34.     During her time in the city jail, Ms. Tater now notifies defendants SHOGREN, WAGNER and HERRERA that she was not psychiatrically stable and requested to be held on an H&S 5150 and hospitalized.  In fact, prior to being released at approximately 8:30 p.m., on August 26, 2019, defendant SHOGREN, knew that Ms. Tater was not psychologically stable, yet despite such knowledge, allowed Ms. Tater to be released in light of the city Jail's H&S 5150 policy requiring a psychiatric hold to be placed on inmates who are great danger to themselves and gravely ill. Defendants WAGNER and HERRERA also knew of the jail's H&S 5150 policy, yet they too, chose to ignore the policy, and allow a psychiatrically unstable Tater to be released from their custody.

35.     Neither did the Defendants release Ms. Tater to the care and custody of her father, Michael Tater.

36.     Approximately 1 hour after she was released from the City Jail, or at 9:30 p.m., Ms. Tater's body was found floating in a man-made water pond in an office complex located immediately across the street from the city jail on 2134 Main St., Huntington Beach. She was floating on her stomach, in 3 feet of water, and curiously had a plastic zip lock bag tied to her wrist containing an aerosol air duster. An office tenant alerted 911 dispatcher that they noted Ms. Tater's body floating in the pond; however, when officers from the HBPD arrived, they left her body in the pond for close to 5 hours before taking it out the pond.

37.   An autopsy performed by an Orange County deputy medical examiner and indicated a cause of death of drowning due to Fluorethane intoxication.

38.   Ms. Tater's blood also tested positive for Fluorethane, the active intoxicating agent in the aerosol duster she initially arrested for.

39.   Plaintiff Michael Tater also requested a separate autopsy to be conducted and revealed additional injuries which were curiously omitted from the County coroner's examination of Ms. Tater, namely, the bruising to the back of her head sustained when she was tackled by WILLIAMS earlier that day was oddly omitted from the county coroner's examination findings.

40.   Ms. Tater was 40 years of age when she passed away.

## FIRST CLAIM FOR RELIEF

**DELIBERATE INDIFFERENCE TO A SUBSTANTIAL RISK OF HARM TO HEALTH & SAFETY-42 U.S.C. § 1983,  14th Amendment of the U.S. Constitution (Against Defendants WILLIAMS, WAGNER,  SHOGREN, HERRERA, and DOES 1-10 )**

41.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1-4, and 20 through 40 of this Complaint with the same force and effect as if fully set forth herein.

42.   From the time decedent was booked at the Huntington Beach city Jail until the time of death, the Defendants repeatedly deny Ms. Tater medical care in repeated violation of her 14th Amendment constitutional rights.

43.   All Defendants were informed by Ms. Tater that she was psychiatrically unstable, was suicidal, was a danger to herself and required prompt intensive care. Ms. Tater was suffering from several mental disabilities including bipolar disorder and schyzoaffective disorder promptly hospitalized.

44. All of the Defendants knew there was a substantial risk to Ms. Tater's mental health if she went untreated, but repeatedly denied her appropriate medical treatment.

45. Defendants made an intentional decision with respect to the conditions under which Ms. Tater was confinement. To wit, defendant WILLIAMS deliberately ignored Ms. Tater's multiple cries for psychiatric help while at the Huntington Beach Hospital and further refused to hold her on a 5150 hold while she had ample opportunities to do so. Defendants WAGNER, HERRERA and SHOGREN, also chose to ignore Ms. Tater's cries for psychiatric help a *second time* and that she was in grave danger to herself, while she was incarcerated at the HBDP city jail. Defendants further failed to discharge Ms. Tater's care and custody to her father, Michael Tater.

46.  Those decisions placed Ms. Tater at a substantial risk of danger, and risk of suffering severe harm and death because every Defendants was unequivocally informed that Ms. Tater was suicidal.

47. Defendants did not take reasonable available measures to abate that risk, even though reasonable officials in the circumstances would have appreciated the high degree of risk involved-making the consequences of the defendants' conduct obvious.

48. By not taking such measures, the defendants caused the Plaintiffs' injuries and ensuing death.

49.  It was objectively unreasonable for the Defendants to ignore the numerous objective signs and symptoms of a serious medical mental health crisis.

50.  The denial of medical treatment exacerbated Ms. Tater's condition to the point where her life was placed in jeopardy.

51. The Defendants, by ignoring Ms. Tater's in this situation and by failing to provide proper medical attention, acted with deliberate indifference to a serious medical condition and the medical needs of Ms. Tater.

52.  Accordingly, Defendants each are liable to Plaintiffs for compensatory and punitive damages under 42 U.S.C. § 1983 and the 14th Amendment, as well as for wrongful death damages.

## SECOND CLAIM FOR RELIEF

### 14th AMENDMENT-STATE CREATED DANGER

### (Against Defendants WILLIAMS, WAGNER, SHOGREN, HERRERA, and DOES 1-10)

53.   Plaintiffs repeat and re-allege each and every allegation in paragraphs 1-4, and 20 through 52 of this Complaint with the same force and effect as if fully set forth herein.

54.   Under the Fourteenth Amendment, Ms. Tater had the constitutional right to be free from defendants' affirmative action of placing her in a position of actual, particularized danger. In this case, defendants SHOGREN, WAGNER, HERRERA, and WILLIAMS knew of Ms. Tater's fear and apprehension of being jailed and being abused at the hands of the Huntington Beach police officers; those fears, whether perceived as real or delusions, exacerbated Ms. Tater mental crisis; importantly, Ms. Tater clearly relayed those fears to WILLIAMS during the hospital visit at the Huntington Beach Hospital. In fact, Ms. Tater's fear of being abused actually turned real when WILLIAMS began to painfully contort Tater's right arm to get her to get off the hospital bed and go to jail. Ms. Tater's fear was not unreasonable because there were no apparent reasons for WILLIAMS to use such unnecessary force while she was still being treated by  nursing staff at the hospital. Ms. Tater again conveyed her fears of being unsafe if she is released from the jail to defendants WAGNER, SHOGREN and HERRERA.  Ms. Tater told the jailers numerous times that she was suicidal, needed her medication, and would be in grave danger if she was released from their custody.

55.   While at the hospital, Ms. Tater was in WILLIAMS' care and custody, and as such, WILLIAMS had an affirmative duty not to expose Ms. Tater to more danger than she would have been prior to her encounter. WILLIAMS also had knowledge that Ms. Tater was using a dangerous and potentially lethal intoxicant in the form of huffing aerosol duster prior to being arrested.

56.    By blatantly denying Ms. Tater' help for her mental health crisis, and removing her from the hospital, WILLIAMS  made an affirmative decision which consequently placed a known suicidal detainee in grave danger: she removed her from a medical facility well equipped to handle suicidal patients, to a city jail facility which was not equipped to process psychiatrically unstable patients.

57.    By refusing to admit Ms. Tater on an *H&S 5150* psychiatric hold, Defendant, WAGNER, SHOGREN, HERRERA and WILLIAMS also acted with deliberate indifference to a known or obvious danger.

58.    Defendants' affirmative acts created a foreseeable risk that Ms. Tater would be in grave danger and/or commit suicide without the proper medical treatment.

59.    Accordingly, Defendants each are liable to Plaintiffs for compensatory and punitive damages under 42 U.S.C. § 1983 and the 14th Amendment, as well as for wrongful death damages.

## THIRD CLAIM FOR RELIEF

### DENIAL OF MEDICAL CARE (42 U.S.C. § 1983)

### (Against Defendants WILLIAMS, SHOGREN, HERRERA, WAGNER and DOES 1-10)

60.    Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs  1-4, 20 through 59 of this Complaint with the same force and effect as if fully set forth herein.

61.    Defendants' denial of mental health care deprived Ms. Tater off her right to be secure in her person against unreasonable searches and seizures as guaranteed to her under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

62.    As a result of the foregoing, Ms. Tater suffered great physical pain and emotional distress up to the time of her death, loss of enjoyment of her life, loss of life, and loss of earning capacity.

63.   Defendants WILLIAMS, SHOGREN, HERRERA, DOES 1-10 and WAGNER knew that a failure to admit Ms. Tater on a *H&S 5150* hold could result in further significant injury or the unnecessary and want infliction of mental pain, but disregarded that serious medical need, causing Ms. Tater great emotional pain and her ensuing death.

64.   The Conduct of WILLIAMS and DOE officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Ms. Tater and therefore warrants the imposition of exemplary and punitive damages as to Defendant WILLIAMS and DOES 1-10.  Defendant WILLIAMS maliciously denied Ms. Tater her right to seek psychiatric care when she was imploring to see a doctor. Instead, WILLIAMS compelled a psychiatrically unstable Tater to go to jail, and rely upon herself to seek a psychiatrist, in her state of crisis.

65.   As a result of their misconduct, Defendants  WILLIAMS, SHOGREN, HERRERA, WAGNER and DOES 1-10 are liable for Ms. Tater either because they were integral participants in the wrongful denial of medical care, or because they failed to intervene to prevent these violations.

66.   Plaintiffs bring this claim as both successor-in-interest to Ms. Tater and individually, seeking both survival and wrongful death damages for the violation of Ms. Tater's rights. Plaintiff also seeks attorney's fees and costs.

### FOURTH CLAIM FOR RELIEF

### VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT
### (42 U.S.C. § 1983) (Against Defendants CITY and DOES 1-10)

67.   Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs  1-4, 20 through 66 of this Complaint with the same force and effect as if fully set forth herein.

68.   Claim Four is a claim for disability discrimination against Defendants and, pursuant to 42 U.S.C. § 1983, for violating Title II of the Americans with

Disabilities Act (ADA) (public entities). Title II of the ADA prohibits disability-based discrimination by any public entity. *See* 42 U.S.C. §§ 12131-12132; 28 C.F.R. § 39.130; and 28 C.F.R. §35.130.

69.    Section 504 of the Rehabilitation Act prohibits discrimination against an individual based on disability by any program or entity receiving federal funds. *See* 29 U.S.C. §§ 794(a), (b)(1)(A), (b)(1)(B), and (b)(2)(B).

70.    These disability anti-discrimination laws impose an affirmative duty on public entities to create policies or procedures to prevent discrimination based on disability.

71.      Ms. Tater was disabled as defined in 42 U.S.C. § 12102 and 42 U.S.C. §§ 12131, 28 C.F.R. §§ 35.108, as she suffered a mental illness impairment that substantially limited one or more of her major life activities.

72.      Defendant CITY is a program or entity that receives federal financial assistance.

73.    Defendant CITY is a public entity as defined by Title II of the ADA.

74.     Defendant City's jail, the HBPD Jail, is a facility and its operation comprises a program of service for purposes of Title II of the ADA.

75.    Ms. Tater was an individual qualified to participate in or receive the benefit of CITY's services, programs, or activities

76.     Ms. Tater was abused because of her disabilities by CITY's agents and employees at the city jail.

77.      Ms. Tater was abused when she was denied psychiatric treatment for known mental health condition she suffered due to her disability, which was known to Defendant CITY and its agents and employees, and the abuse of Defendant CITY and its agents and employees. Such abuse and denial of medical treatment by Defendant CITY and its agents and employees was in spite of Ms. Tater's disability. Such abuse constitutes discrimination against individuals based on their disability in violation of the Rehabilitation Act and Title II of the ADA.

78.    Defendant CITY failed to provide any medical services or to hospitalize and admit Ms. Tater on H&S 5150 hold specifically for the care and treatment of her suicidal tendencies and psychiatric instability.

79.    Defendant CITY showed a deliberate indifference towards Ms. Tater and his medical needs when:

a.    CITY failed to provide any management and treatment specific to her psychiatric instability and obvious presentations of her suicidal condition.

b.    CITY failed to enforce its own policy for *H&S 5150* psychiatric holds when presented with a known and patently ill and suicidal Tater.

c.    CITY showed a bias towards treating her mental illness impairment when CITY defendants failed to send her back an outside facility capable of providing Ms. Tater with a higher level of care in response to her disabilities.

d.    CITY further discriminated against Ms. Tater by failing to provide a non-abusive, safe treatment environment at the city jail generally, and, as a result, Ms. Tater died.

80.    Plaintiffs bring this claim as both successor-in-interest to Ms. Tater and individually, seeking both survival and wrongful death damages for the violation of Ms. Tater's rights. Plaintiff also seeks attorney's fees and costs.

## **FIFTH CLAIM FOR RELIEF**

### **SUPERVISORY LIABILITY - (42 U.S.C. § 1983)**

### **(Against Defendants HERRERA and DOES 1-10)**

81.    Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs 1-4, 20 through 80 of this Complaint with the same force and effect as if fully set forth herein.

82.    At all times relevant to this complaint, Defendant HERRERA was acting under color of state law as a detention officer or jailer, and as the ranking supervisor to defendants SHOGREN and WAGNER.

83.    Defendant HERRERA directed defendants SHOGREN and WAGNER to ignore Ms. Tater's suicidal ideations (i.e.: *"I am going to kill myself")* and her help for psychiatric help, and therefore, to release her in her highly vulnerable mental state.

84.    Defendant HERRERA's conduct was so closely related to the deprivation of Ms. Tater's right as to be the moving force that caused her ultimate death.

85.    As a direct and legal result of defendants' acts, Plaintiffs have suffered damages, including, without limitation, funeral expenses, and past and future pain and suffering, loss of life, loss of opportunity for life, and compensatory damages. Such damages including attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained. Additionally, Defendants are liable to Plaintiffs for compensatory and punitive damages under 42 U.S.C. § 1983.

<u>**SIXTH CLAIM FOR RELIEF**</u>

***MONELL*- FAILURE TO TRAIN (42 U.S.C. §1983)**

**(Against Defendant CITY and DOES 1-10)**

86.    Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs  1-4, 20 through 85 of this Complaint with the same force and effect as if fully set forth herein.

87.    Defendant CITY knew that Ms. Tater was suffering from an emergency psychiatric condition and that the HBPD city jail was not equipped to care for the acutely ill patients. Given the known limitations of the city jail, it was obvious that City jail detention staff, including the individual defendants would need special training in order to care adequately for mentally unstable detainees and to assess whether such patients should be transferred to the hospital on an *H&S 5150* hold.

88.    Defendants WILLIAMS, WAGNER, SHOGREN and HERRERA had not been trained in the adequate monitoring, documentation and assessment of suicidal inmates and their corresponding mental crisis within the confines of a

limited-care facility such as the HBPD jail, and that this failure to train led to a complete failure of care to an unstable Tater, ultimately resulting in her death.

89.   Despite HBPD's general jail policy and procedure requiring that medically unstable inmates who are danger to themselves and gravely ill be seen by a doctor and transferred to a hospital for acute *H&S 5150* care, CITY had failed to train the detention staff adequately as to recognize the urgency with which medically unstable inmates must be assessed in light of HBPD city jail's limited medical facilities.

90.   Defendant CITY further had a custom, practice and policy of booking and releasing psychiatrically unstable inmates, in effect placing the burden on seeking emergency care upon the sick inmates, without training their staff on how to implement proper procedures for documenting, monitoring, assessing and most importantly, actually administering *H&S 5150* hold on inmates suspected of being a danger to themselves and gravely ill.

91.  Defendant CITY employees had a custom and practice  of deliberately ignoring suicidal claims by the public which it is intended on protecting. Specifically, defendant CITY had previously ignored suicidal claims and ideations of one deceased Mathew Cline in 2013 and therefore, had prior notice of the consequence of deliberately ignoring a suicidal in-custody's pleas for help. (*See William Cline et al. v City of Huntington Beach et al.* )

92.   As a result of the CITY's failure to adequately train and implement policies, Ms. Tater was caused undeserved pain and agony all culminating to her death on August 26, 2018.

93.   As a direct and legal result of Defendants' acts, Plaintiffs have suffered damages, including, without limitation, funeral expenses, and past and future pain and suffering, loss of life, loss of opportunity for life, and compensatory damages. Such damages including attorneys' fees, costs of suit, and other pecuniary losses

not yet ascertained. Additionally, Defendants are liable to Plaintiffs for compensatory and punitive damages under 42 U.S.C. § 1983.

## SEVENTH CLAIM FOR RELIEF

### *MONELL*- UNCONSTITUTIONAL CUSTOM, POLICY OR PRACTICE (42 U.S.C. §1983)

### (Against Defendant CITY and DOES 1-10)

94.   Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs  1-4, 20 through 93 of this Complaint with the same force and effect as if fully set forth herein.

95.   On and for some time prior to August 26, 2018, (and continuing to the present date) Defendants CITY deprived Plaintiffs' decedent of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, in that said defendants and their supervising and managerial employees, agents, and representatives, acting with  reckless and deliberate indifference to the rights and liberties of  Plaintiffs' decedent and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized county custom, policy, and practice of: Acting deliberately indifferent to the serious medical needs of inmates and newly booked inmates when defendants failed to take any meaningful corrective measures despite being previously placed on notice of their egregious practices resulting in prior deaths. The following is a list of *Monell* violations:

(a)  Failing to implement policies and procedures on basic symptom recognitions and assessment of inmates who are danger to themselves;

(b)  Routinely failing to train detention staff on the symptoms and assessment of inmates suffering from suicidal ideations requiring emergency medical care;

(c)  Inadequately supervising, training, controlling, assigning, and disciplining employees including HBPD Jail staff;

(d)  Routinely neglecting and ignoring gravely ill inmates and enabling the custom and practice of requiring psychiatrically unstable inmates to rely upon themselves to seek emergency mental health treatment;

(e)  Engaging in the custom and practice of discriminating against mentally ill inmates and withholding urgent mental health treatment;

(f)  Routinely preventing inmates access to medical doctors, due to a custom and practice of a failed booking policy;

95.    By reason of the aforementioned policies and practices of Defendants and CITY, Plaintiffs have suffered the loss of their mother and daughter, Shannon Tater.

96.    Defendant CITY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies.  Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Plaintiffs and other individuals similarly situated.

97.    By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants CITY, acted with an intentional, reckless, and callous disregard for the well-being of decedent and his constitutional as well as human rights.

98.    Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendants CITY were affirmatively linked to and were a significantly influential force behind the decedent's death.

99.    As a direct and legal result of Defendants' acts, Plaintiffs have suffered damages, including, without limitation, funeral expenses, and past and future pain and suffering, loss of life, loss of opportunity for life, and

compensatory damages.   Such damages including attorneys' fees, costs of suit, and other pecuniary losses not yet ascertained. Additionally, Defendants are liable to Plaintiffs for compensatory and punitive damages under 42 U.S.C. § 1983.

### EIGHTH CLAIM FOR RELIEF

### NEGLIGENCE-WRONGFUL DEATH

### (Against CITY, WILLIAMS, SHOGREN, HERRERA, WAGNER and DOES 1-10)

100.    Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs  1-4, 20 through 99 of this Complaint with the same force and effect as if fully set forth herein.

101.    Plaintiff brings this action pursuant to the California Wrongful death statutes as codified in Code of Civil Procedure §377.60, §377.32 and §377.34.

102.    The decedent is survived by her daughter Kyla Skye Staniskis, who is entitled to recover wrongful damages for her death.

103.    The decedent did not bring any action for personal injury in her lifetime, and no other action from the death of Decedent has been commenced against the defendants.

104.    Defendant CITY is vicariously liable for the negligent acts of its employees while performed in the scope of employment.

105.    Defendants WILLIAMS, SHOGREN, HERRERA, WAGNER and DOES 1-10 owed a duty of care to Ms. Tater, while she was in their care and custody, to prevent endangering a known mentally ill detainee who was suffering from a mental health crisis and patent suicidal ideations. Defendants further owed a duty of care to Ms. Tater to ensure that she was released to the immediate care and custody of her father, Michael Tater.  Defendants owed a duty of care to make sure Ms. Tater had access to her psychiatric medication when specifically requested for the same. Defendants owed a duty of care not to ignore multiple suicidal ideations and to take them seriously and place her in the appropriate

medical care. They further owed a duty of care to ensure Ms. Tater had access to a medical doctor when she was exhibiting suicidal ideations and specifically requested to seek a medical doctor.

106.     It was foreseeable that Ms. Tater, who was mentally ill, and experiencing a severe psychiatric crisis would be in grave danger if allowed to be released from Defendants' custody and without the immediate emergency mental health treatment, and in light of her propensity to become intoxicated to the point of losing consciousness.

107.     Defendants breached their duty of care to ensure that their in-custody, the person who they were directly responsible for, was reasonably safe during the time she was in their custody and care. Defendant WILLIAMS breached her duty of care when she physically abused Ms. Tater at the hospital by contorting her right arm while she had nurse attend to her head wound. Defendants, cumulatively further breached their duty of care to make sure Ms. Tater had her medication on her when they released her.  Defendant breached their duty of care when they failed to notify Michael Tater of her release and failed to directly transfer her care and custody to him.

108.     Defendants knew, or in the exercise of reasonable care should have known that by releasing a knowing mentally ill detainee, especially one who was experiencing suicidal ideations and tendencies, without immediate mental health treatment would place her in immediate and grave danger. Defendant WILLIAMS, knew or in the exercise of reasonable carte should have known that by denying Ms. Tater access to mental health doctors, while at the hospital, that she was placing her in immediate danger of harm to her herself.

109.     That as a direct and proximate result of the acts and omissions of the Defendants, and each of them, Decedent has suffered injuries to her body and her mind all of which survives his death and are represented by Plaintiff Staniskis as

successors-in-interest to Ms. Taters' special and general damages. All to Plaintiffs' general damage in a sum according to proof at the time of trial

110.     As a further direct and proximate result of defendant WAGNER's conduct, said conduct was so in fact done with malice, WAGNER knew or should have known that to outright deny a mentally ill person's desperate request to seek psychiatric help and without her medication and supervision, such act was so despicable and done with willful and knowing disregard for the safety of Ms. Tater, justifying the award of exemplary damages.

## NINGTH CLAIM FOR RELIEF

### BATTERY (Against CITY, WILLIAMS and DOES 1-10)

111.   Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs  1-4, 20 through 110 of this Complaint with the same force and effect as if fully set forth herein.

112.   Defendant CITY is vicariously liable for the actions of its employees while performed in the scope of employment.

113.   Defendant WILLIAMS used more force than necessary to subdue Ms. Tater prior to her 2nd arrest on August 26, 2020. By engaging in excessive force to subdue Ms. Tater, WILLIAMS committed a battery upon her.

114.   Subsequently, while at the Huntington Beach Hospital, WILLIAMS committed yet a second act of battery when she unlawfully and forcefully contorted and twisted Ms. Tater's right arm to unlawfully force her out of her hospital bed while she was in the middle of wound care.

## TENTH CLAIM FOR RELIEF

### 4th AMENDMENT-EXCESSIVE FORCE

### (Against WILLIAMS, SHOGREN, HERRERA, WAGNER and DOES 1-10)

115.   Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs  1-4, 20 through 114 of this Complaint with the same force and effect as if fully set forth herein.

116.   Defendants WILLIAMS, SHOGREN, HERRERA, WAGNER and DOES 1-10) while working as agents for CITY and acting within the course and scope of their duties, caused Ms. Tater to be detained and arrested, in violation of her rights to be secure in her person against unreasonable searches and seizures, as guaranteed to her under the Fourth Amendment to the Constitution of the United States and applied to state actors by the Fourteenth Amendment.

117.   Defendants WILLIAMS and DOES 1 through 10, while working as agents for CITY and acting within the course and scope of their duties, caused Ms. Tater to be assaulted multiple times, with the intent of inflicting serious injury when she posed no threat to the Defendants or those around her. Defendants WILLIAMS unnecessary tackled Ms. Tater causing her head to strike the pavement. Subsequently, WILLIAMS engaged in an unsanctioned control hold without any legitimate reasons while Ms. Tater was treated for her head wound.

118.   All aforementioned acts were in violation of Decedent's right to be secure in her person against an unreasonable seizure guaranteed by the Fourth Amendment to the United States Constitution.

119.   As a result of this conduct, defendants are liable to Plaintiffs for her injuries, because they were integral participants in their reckless conduct.

120.   Plaintiffs are informed and believe and hereon allege that the acts of the individual defendants were willful, malicious, intentional, oppressive, reckless, and/or were done in willful and conscious disregard of his rights, welfare, and safety, thereby justifying the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

## **ELEVENTH CLAIM FOR RELIEF**
### **BANE ACT CAL. CIVIL CODE 52.1 et seq.**
### **(Against CITY, WILLIAMS, SHOGREN, HERRERA,**
### **WAGNER and DOES 1-10)**

121.   Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs  1-4, 20 through 120 of this Complaint with the same force and effect as if fully set forth herein.

122.   California Civil Code, Section 52.1 (the Bane Act), prohibits any person from using violent acts or threatening to commit violent acts in retaliation against another person for exercising that person's constitutional rights.

123.   On information and belief, the officer defendants, while working for the CITY and acting within the course and scope of their duties, intentionally committed and attempted to commit acts of violence against Ms. Tater, including using excessive and physically abusing her without justification or excuse, by integrally participating and failing to intervene in the above violence, and by denying her necessary mental health care.

124.   When Defendants committed the above acts, they interfered with her civil rights to be free from unreasonable searches and seizures, to due process, to equal protection of the laws, to medical care, to be free from state actions that shock the conscience, and to life, liberty, and property.

125.   On information and belief, Defendants intentionally and spitefully committed the above acts to discourage Ms. Tater from exercising her civil rights, to retaliate against her for invoking such rights, or to prevent her from exercising such rights, which she was fully entitled to enjoy.

126.   On information and belief, Ms. Tater reasonably believed and understood that the violent acts committed by the officer defendants were intended to discourage her from exercising the above civil rights, to retaliate against her, or invoking such rights, or to prevent her from exercising such rights.

127.   Defendants successfully interfered with the above civil rights of Ms. Tater and Plaintiffs.

128.   The conduct of Defendants was a substantial factor in causing Plaintiffs' harms, losses, injuries, and damages.

129.   CITY is vicariously liable for the wrongful acts of the officer defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability

130.   Defendants DOES 7-10 are vicariously liable under California law and the doctrine of *respondeat superior*.

131.   The conduct of Defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for Ms. Tater and Plaintiffs' rights, justifying an award of exemplary and punitive damages as to the defendants.

132.   Plaintiffs brings this claim both individually and  as a successor-in-interest to the decedent, and seek survival and wrongful death damages under this claim. Plaintiff also seeks punitive damages and attorneys' fees under this claim.

## <u>TWELTH CLAIM FOR RELIEF</u>

## 14th AMENDMENT-INTERFERENCE WITH FAMILIAL RELATIONS (Against WILLIAMS, SHOGREN, HERRERA, WAGNER and DOES 1-10)

133.   Plaintiffs hereby repeat, re-state, and incorporate each and every allegation in paragraphs  1-4, 20 through 132 of this Complaint with the same force and effect as if fully set forth herein.

134.   Plaintiff Kyla Staniskis had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive her of life, liberty, or property in such a manner as

to shock the conscience, including but not limited to unwarranted state interference in Plaintiff's familial relationship with her mother, Shannon Tater

135.    Plaintiff Michael Tater had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in his familial relationship with his daughter, Shannon Tater.

136.    The aforementioned actions of Defendants WILLIAMS, SHOGREN, HERRERA,WAGNER and DOES 1-10, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Ms. Tater and Plaintiffs, and with purpose to harm unrelated to any legitimate law enforcement objective.

137.    As a direct and proximate result of these actions, Ms. Tater experienced pain and suffering and eventually died.  Defendants thus violated the substantive due process rights of Plaintiffs to be free from unwarranted interference with their familial relationship with Ms. Tater.

138.    As a direct and proximate cause of the acts of Defendants, Plaintiffs suffered emotional distress, mental anguish, and pain.  Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Ms. Tater, and will continue to be so deprived for the remainder of their natural lives.

139.    As a result of their misconduct, Defendants WILLIAMS, SHOGREN, HERRERA,WAGNER and DOES 1-10, are liable for Ms. Tater's injuries, either because they were integral participants in the use of excessive force and failure to provide medical care, or because they failed to intervene to prevent these violations.

140.    Defendants' conduct was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Ms. Tater and Plaintiffs and therefore

warrants the imposition of exemplary and punitive damages as to the individual Defendants.

141.   Plaintiffs brings this claim both individually and  as a successor-in-interest to the decedent, and seek survival and wrongful death damages under this claim. Plaintiff also seeks punitive damages and attorneys' fees under this claim

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request entry of judgment in their favor and against all Defendants, and DOES 1 through 10 inclusive, as follows:

1.   For compensatory including special and general damages according to proof;

2.   For punitive damages against the individual defendants in an amount to be proven at trial;

3.   For interest;

4.   For reasonable costs of this suit and attorneys' fees per 42 U.S.C. §1988 and C.C. 52.1 et seq.; and

5.   For such further other relief as the Court may deem just, proper, and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

Date: September 17, 2020          THE SEHAT LAW FIRM, PLC


*/s/ Cameron Sehat*
Attorney for Plaintiff, Kyla Staniskis