THE SEHAT LAW FIRM, PLC
Cameron Sehat, Esq. (SBN: 256535)
Email: Cameron@Sehatlaw.com
Sarah Kahn, Esq. (SBN: 341901)
Email: Sarah.K@Sehatlaw.com
5100 Campus Dr. Suite 200
Newport Beach, CA 92660
Telephone: (949) 825-5200
Attorneys for Plaintiff Kyla Skye Staniskis

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL GEORGE TATER, individually; KYLA SKYE STANISKIS, individually and as Personal Representative of the Estate of SHANNON MICHELLE TATER<br><br>Plaintiffs,<br>vs.<br><br>CITY OF HUNTINGTON BEACH, a Governmental Entity; STEFANI WILLIAMS, individually; MICHAEL WAGNER, individually; NICOLE SHOGREN, individually; KELLI HERRERA, individually; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 8:20-cv-01772-MEMF-JDE<br><br>Judge: Hon. Maame Ewusi-Mensah Frimpong<br><br>**PLAINTIFF KYLA STANISKIS'S EX PARTE APPLICATION TO SUBSITUTE PATRICK ELLIS AS TRUE NAME FOR AN UNNAMED "DOE" DEFENDANT**<br><br>No Hearing Set |

1
**PLAINTIFF'S EX PARTE APPLICATION TO SUBSTITUTE TRUE NAMES
FOR THE UNNAMED "DOE" DEFENDANTS**

## I.  INTRODUCTION

PLEASE TAKE NOTICE that Plaintiff Kyla Staniskis will MOVE THIS Court by way of this *Ex Parte* Application for Substitution of DOE Defendant ("Application") and does petition this Court for an order approving of the above-noted action. Plaintiff Kyla Staniskis makes this Application pursuant to Central District Local Rule 7-19. The grounds for this Application are set forth in the Memorandum of Points and Authorities as set forth below and the Declaration of Cameron Sehat ("Sehat Decl."), which is filed concurrently herewith.

Prior to filing this *Ex Parte* application, Plaintiff Kyla Staniskis's counsel contacted Defendants' counsel and provided notice of this motion pursuant to Central District Local Rule 7-19.1. Defendants are represented by counsel Michael Gates and Nadin Said, 2000 Main St., PO Box 190, Huntington Beach, CA 92648, 714-536-5555, nadin.said@surfcity-hb.org.

The Application seeks approval of the substitution of Patrick Ellis for DOE Defendant.

Plaintiff Kyla Staniskis respectfully requests this application be approved on an *ex parte* basis. The grounds for this Motion are set forth in the Memorandum of Points and Authorities, which follows below, the Petitioner's verification and endorsement, the Declaration of Cameron Sehat ("Sehat Decl.") which is submitted concurrently herewith, exhibits to the declaration, the proposed order filed concurrently herewith, and pleadings and other papers on file in this action, and all other matters of which the Court may take judicial notice.

## II.  FACTUAL STATEMENT

Plaintiff brings this motion to substitute the unnamed DOE defendants with

the true names of the actual defendants in this matter. Deposition discovery of Patrick Ellis did not take place until September 1, 2022. It was not until Patrick Ellis was deposed that additional facts came out about Mr. Ellis's interactions with Shannon Tater on the day of her death and his presence and actions during the subsequent investigation.

First, Mr. Ellis stated that he had only been spat at a single time in his career by an incarcerated person and that he had not placed anyone in a spit hood (used to prevent an individual from spitting by blocking their face and mouth) the day of Shannon Tater's death. (Exhibit A, Rough Deposition of Ellis 52:3-5). He stated that he does not use a spit hood in the jail and that he would have noted it if anyone had spit on him that day. (Ellis Depo. 52:15-19 and 53:1-11). He did admit that Ms. Tater had been the only individual to ever spit on him, but that it had been in 2015 or 2016. (Ellis Depo. 53:17). A few moments later, Mr. Ellis identified a screenshot of video from that day that showed him leading a person who appeared to be Shannon Tater in a spit hood. (Ellis Depo. 56:15-57:21; Exhibit B, still image). These new facts bring to light a possible tension or animosity between Mr. Ellis and Ms. Tater that may have impacted his actions towards her that day and his decision to discontinue her medical screening questionnaire before finishing it. (Exhibit C, Medical Screening Questionnaire).

Second, Mr. Ellis described returning to the scene of Ms. Tater's death, across the street from the jail, in his role as Detective. (Ellis Depo. 95:8-10). Even though he had finished a regular shift and an overtime shift at the jail just hours before, he returned to the scene that night and was there at approximately 11:45pm. He returned to work that night even though several other HBPD officers were already there ("I am the last one there from my unit."). (Ellis Depo. 96:13). He did

3
**PLAINTIFF'S EX PARTE APPLICATION TO SUBSTITUTE TRUE NAMES
FOR THE UNNAMED "DOE" DEFENDANTS**

not leave the scene until after 4am. (Ellis Depo. 96:22-25). He stated that he was "on standby" in his car because "it's a person that was in our custody, we're not handling this." (Ellis Depo. 97:21-24). Then he shifted his story, testifying that he did get out of his car when the sheriff arrived and he began speaking with them. (Ellis Depo. 98:1-5). He stated that he identified Ms. Tater from her clothes and build, before they touched the body, which was face down. (Ellis Depo. 98:6-11). He then testified that he discussed other facts about the case with the sheriffs, including the evidence at the scene, who the witnesses were, and what they saw. (Ellis Depo. 98:10-23). He testified that he did not speak with Coroner Bran, but Bran's investigator report describes a conversation between herself and Mr. Ellis, including that he stated that he had released her. (Exhibit D, Bran Deposition 39:1-5; 54:20-55:10; 81:1-9; Exhibit E, Coroner's Investigator Report; Ellis Depo. 99:7-12). Mr. Ellis also testified that he never stated that he had released Ms. Tater, which also contradicts Bran's report. (Ellis Depo. 101:7-17). Mr. Ellis verified documents he had filled out, including property inventory, that were dated the day after Ms. Tater's release, but which should have been completed before her release. (Exhibit F). Mr. Ellis is also listed as an investigator on the on-scene personnel log from the death investigation, despite his close involvement in the last hours of Shannon Tater's life. (Exhibit G).

   The inconsistencies in Mr. Ellis's testimony, evidence that he had a potentially violent interaction with Ms. Tater the day she died, and information about his involvement in the investigation all indicate that he may have been deliberately indifferent to a risk of harm to her health and safety, that he may have been malicious in his indifference, that he may have placed her in danger, that he may have failed to summon medical care when she needed it, and that he failed his

constitutional duty to Ms. Tater as an individual in his custody.

Under California law regarding the substitution of true names of DOE defendants, a law which the Ninth Circuit has specifically held applies to federal civil rights cases, plaintiffs have up to three years from the date of filing to name the substitute true names for DOE defendants. In addition, as outlined above, there has been no undue or unreasonable delay in substituting in the true names of the defendants responsible for Shannon Tater's care for the unnamed DOE defendants. As such, plaintiff's request should be granted.

### III.  ARGUMENT

In California courts, the substitution of DOE defendants is controlled by California Code of Civil Procedure § 474 which provides that "when the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint,...and such defendant may be designated in any pleading by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly..." California law permits such substitution up to three years after the commencement of the suit. Cabrales v. County of Los Angeles, 864 F. 2d 1454, 1463 (9th Cir. 1988). The Ninth Circuit has specifically approved the procedure outlined in CCP 474 in § 1983 litigation. Id. at 1462-1462. More recently, the Ninth Circuit has applied CCP § 474 to a *Bivens* civil action. Kreines v. United States, 959 F. 2d 834, 837 (9th Cir. 1992). In states that do not have a law specifically addressing the substitution of DOE defendants, federal courts have applied a "no unreasonable delay" standard. *See e.g.,* Elysian v. First Equity Corp., 713 F. Supp. 737, 751, fn. 19 (D. NJ. 1989).

As outlined by Ninth Circuit in Kreines, "section 474 allows a plaintiff in

good faith to delay suing particular persons as named defendants until he has knowledge of sufficient facts to cause a reasonable person to believe that liability is probable." Kreines, 959 F. 2d at 837; citing Dieckman v. Superior Court, 175 Cal. App. 3d 345 (1989). "Section 474 is to be construed liberally to accomplish its purpose...Further, substitution avoids the necessity of indiscriminately naming all known persons who may potentially be connected to a suit and encourages reasoned substitution for fictitious defendants after resort to discovery" Kreines, 959 F. 2d at 837-838; *citing* Munoz v. Purdy, 91 Cal. App. 3d 942 (1979).

In this matter, the suit was initially filed on September 17, 2020. Therefore, plaintiff is well within the three-year statute set forth in CCP 474. Further, plaintiff judiciously waited until the information identifying the persons responsible for the in-custody care of Shannon Tater were produced so that key depositions could be taken before requesting permission to substitute the true names for the DOES defendants. As outlined, in that deposition, which was taken on September 1, 2022, new information came to light that identified Mr. Ellis as a person probably liable for Ms. Tater's death. As such, plaintiff's request to substitute true names for unnamed DOE defendants should be granted.

Further, this deposition provided the factual support needed to form a firm basis upon which it could be fairly said that "liability is probable." As such, plaintiffs' request to substitute true names for unnamed DOES defendants should be granted.

## IV.  CONCLUSION

When filing the instant lawsuit, plaintiff, cognizant of the stress and inconvenience being named in a lawsuit can cause, chose until now to substitute

the true names for the DOE defendants. As outlined, key depositions were taken on September 1, 2022 that firmly established the involvement of Patrick Ellis as well as provided a factual basis upon which it could be fairly said that liability was "probable." As such, plaintiffs respectfully request their application be granted.

                                              THE SEHAT LAW FIRM, PLC

Date: September 15, 2022        By: /s/ Cameron Sehat           .
                                                Cameron Sehat
                                                Attorney for Plaintiff